# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# RICHMOND DIVISION

**ZOHA RAHMAN,**
c/o: Meridian Law, LLC
1212 Reisterstown Road
Baltimore, MD 21208

         **Plaintiff,**

         **-v-**

**EXPERIAN INFORMATION SOLUTIONS, INC.**
475 Anton Boulevard
Costa Mesa, CA 92626

**EQUIFAX INFORMATION SERVICES, LLC**
c/o Corporation Service Company
2 Sun Court, Suite 400
Peachtree Corners, GA 30092

**TRANSUNION, LLC**
555 W. Adams Street
Chicago, IL 60661

**AMERICAN EXPRESS COMPANY**
c/o CT Corporation System
330 N Brand Blvd, Suite 700
Glendale, CA 91203

**Civil Case Number:**   3:24cv253

-1-

**ALLY FINANCIAL INC.**
c/o CT Corporation System
40600 Ann Arbor Rd East, Suite 201
Plymouth, MI 48170

                **Defendants.**

## COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

1. Identity theft has long been a widespread problem in this country. Over the past decades, identity theft has emerged as one of the fastest growing white-collar crimes in the United States.[1] Millions of Americans annually fall victim to this crime and are required to spend countless hours and untold effort in attempting to undo the resulting harm caused to their credit reports.[2] Frequently, identity theft is perpetrated by an individual close to the victim, including family members.[3]

2. Plaintiff, Zoha Rahman, has been the unfortunate victim of identity theft at the hands of her ex-boyfriend. Specifically, upon information and belief, this individual fraudulently opened accounts with AMEX and Ally under Plaintiff's name, without her knowledge or authorization. These accounts have destroyed Ms. Rahman's credit with the reporting of these

---

[1] *See, Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 505 (4th Cir. 2007).
[2] Victimization surveys conducted by Synovate for the Federal Trade Commission estimate that, between 1998 and 2003, approximately 27.3 million adults Merrick Banked they were the victims of identity theft, with 9.91 million adults Merrick Banking they were victims in 2003 alone. *See,* Graeme R. Newman & Megan M. NcNally, *Identity Theft Literature Review* 14 (2005), http://www.ncjrs.gov/pdffiles1/nij/grants/210459.pdf (citing Synovate, Federal Trade Commission—Identity Theft Survey Report 7, 12 (2003), http:// www.ftc.gov/os/2003/09/synovatereport.pdf).
[3] *See*, *David Lukic*, Family Identity Theft: What to Do If a Family Member Steals Your Identity, April 14, 2022, available at https://www.idstrong.com/sentinel/family-identity-theft/#:~:text=They%20could%20use%20their%20social,are%20perpetrated%20by%20family%20members. ("The FTC estimates that nine percent of stolen identity crimes are perpetrated by family members")

accounts negatively as a result.

3. Rather than working with Ms. Rahman to rectify this unfortunate situation, each of the Defendants refuse to remove this fraudulent information from her credit report, despite the Plaintiff specifically disputing these fraudulent items. Instead, the Defendants have continued to willfully and negligently harm the Plaintiff's credit report by continuing to associate these fraudulent accounts with the Plaintiff, thereby severely impacting Plaintiff's life and her ability to obtain credit.

4. Plaintiff thus brings this action under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. (the "FCRA") alleging Equifax Information Services, LLC, Experian Information Solutions, Inc., Transunion, LLC, AMEX and Ally have been negligently, recklessly and knowingly disseminating false information regarding the Plaintiff's credit, namely by continuing to associate Plaintiff with these fraudulent accounts, particularly after the Plaintiff mailed letters to Defendants specifically advising them of this issue and submitting the necessary supporting documentation.

5. Plaintiff further alleges that the consumer reporting agencies Transunion, Equifax and Experian failed to investigate credit report inaccuracies in response to Plaintiff's disputes.

6. Plaintiff seeks statutory, actual, and punitive damages, along with injunctive and declaratory relief, and attorneys' fees and costs.

## JURISDICTION

7. The Court has jurisdiction of this matter under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

8. Venue is proper in this judicial District pursuant to 28 U.S.C. 1391(b)(2).

**PARTIES**

9. Plaintiff, Zoha Rahman ("Plaintiff"), is a resident of Glen Allen, Virginia and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

10. Defendant Equifax Information Services, LLC ("Equifax") is one of the largest credit reporting agencies in the United States and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

11. Equifax's principal place of business is 1550 Peach Tree Street, N.W., Atlanta, GA 30309.

12. Defendant Experian Information Solutions, Inc. ("Experian") is one of the largest credit reporting agencies in the United States and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

13. Experian is a corporation with its headquarters located in Costa Mesa, California.

14. Defendant Transunion, LLC ("Transunion") is also one of the largest credit reporting agencies in the United States, and is engaged in the business of assembling and

disseminating credit reports concerning hundreds of millions of consumers. Transunion is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

15. Transunion is a company with its principal place of business located at 555 West Adams Street, Chicago, IL 60661.

16. Defendant American Express Company ("AMEX") is a financial institution headquartered in New York, New York.

17. Defendant Ally Financial Inc. ("Ally") is a financial institution with its principal office located in Detroit, Michigan.

## FACTUAL ALLEGATIONS

18. Sometime before January of 2024, Plaintiff discovered she was the victim of identity theft at the hands of her ex-boyfriend. Around that same time, Plaintiff noticed that a number of accounts were appearing on her consumer credit reports from Equifax, Experian and Transunion (collectively the "CRAs"), that were opened without her knowledge or authorization. These fraudulent accounts include:

- American Express – 3499929480749253; and
- Ally Financial – 228110015864.

19. Accordingly, Plaintiff took appropriate action, including filing a police report with the Henrico County Police Division and completing a sworn FTC Identity Theft Affidavit, in which she listed the accounts as they were appearing on her credit reports despite the fact that they were not opened with her knowledge or authorization.

20. Most recently, Plaintiff disputed these fraudulent accounts with the CRAs on or about January 16, 2024. In those disputes, Plaintiff clearly advised the CRAs that she was the victim of identity theft, and that this information should be removed and blocked.

21. With those disputes, Plaintiff included copies of the sworn FTC Identity Theft Affidavit.

22. Upon information and belief, Defendant AMEX received notice of these disputes from the CRAs.

23. Following receipt of Plaintiff's dispute, Experian refused to investigate, correct or remove the fraudulent AMEX and Ally accounts from the Plaintiff's credit file. Instead, that information is still being reported to this day.

24. Upon information and belief, Experian had all the information they needed to locate, investigate, and correct this inaccurate information, but just failed to do so.

25. Equifax also refused to investigate, correct or remove the fraudulent AMEX and Ally accounts from the Plaintiff's credit file. Instead, that information is still being reported to this day.

26. Upon information and belief, Equifax had all the information they needed to locate, investigate, and correct this inaccurate information, but just failed to do so.

27. Similarly, Transunion refused to investigate, correct or remove the fraudulent AMEX and Ally accounts from the Plaintiff's credit file. Instead, that information is still being reported to this day.

28. Upon information and belief, Transunion had all the information they needed to locate, investigate, and correct this inaccurate information, but just failed to do so.

29. The CRAs, AMEX and Ally were each notified of the respective disputes, but

refused to investigate and/or remove inaccurate reporting.

30. At all times pertinent hereto, Defendants' violations of the FCRA were willful, and carried out in reckless disregard for consumer's rights as set forth under section 1681s, 1681i and 1681b of the FCRA. Accordingly, Plaintiff is entitled to statutory, actual, and punitive damages under 15 U.S.C. § 1681n.

31. Additionally, Defendants' violations of the FCRA were negligent. Accordingly, Plaintiff is entitled to statutory and actual damages under 15 U.S.C. § 1681o.

32. In any event, Defendants are liable for Plaintiff's reasonable attorneys' fees and costs, pursuant to 15 U.S.C. §§ 1681n and 1681o.

33. As a direct and proximate result of the Defendants' willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed in her daily life, by the impact that this derogatory information has had on her credit score and her ability to secure credit. For example, Plaintiff has been denied credit due to these derogatory inaccuracies.

34. Defendants' violations of the FCRA further caused the Plaintiff great distress, anger, annoyance and frustration in her daily life, and subjected the Plaintiff to abusive credit reporting practices from which Plaintiff had a substantive right to be free.

## COUNT I
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681i
## AGAINST EQUIFAX

35. Plaintiff incorporates by reference all preceding paragraphs.

36. At all times pertinent hereto, Equifax was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

37. The FCRA provides that:

> ***"if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer*** *and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute,* ***the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file*** *in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."*
> 15 U.S.C. § 1681i(a)(1)(a) (emphasis added).

38. On or about January 16 of 2024, the Plaintiff initiated a dispute with Equifax requesting that they correct and remove the specific fraudulent items in her credit file that were patently inaccurate and damaging to her, including the fraudulent AMEX and Ally accounts. Plaintiff provided information and documentation showing that she was the victim of identity theft and had not opened these accounts.

39. However, Defendant Equifax never adequately investigated the Plaintiff's disputes, as required by the FCRA.

40. Instead, Equifax, after either conducting no investigation or failing to conduct a reasonable investigation, continued to report this inaccurate information, something that any basic investigation would have prevented.

41. As a direct and proximate result of Equifax's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed, as explained above.

**COUNT II**
**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681c-2**
**AGAINST EQUIFAX**

42. Plaintiff incorporates by reference all preceding paragraphs.

43. On or about January 16, 2024, Plaintiff initiated a dispute with Equifax requesting

that they correct and remove the fraudulent AMEX and Ally accounts, as these accounts were fraudulently opened by an individual other than Plaintiff as a result of identity theft.

44. In support of this dispute, the Plaintiff included copies of the sworn FTC Identity Theft Affidavit.

45. Equifax refused to acknowledge that it had different obligations under such circumstances than those triggered by a standard dispute.

46. As such, instead of following the law and blocking the fraudulent information on the Plaintiff's credit report within four days of receiving the dispute, Equifax continued to report this fraudulent information.

47. As a direct and proximate result of Equifax's willful and/or negligent refusal to block this fraudulent information, as mandated by the FCRA, Plaintiff has been harmed.

## COUNT III
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681i
## AGAINST EXPERIAN

48. Plaintiff incorporates by reference all preceding paragraphs.

49. At all times pertinent hereto, Experian was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

50. The FCRA provides that:

> "*if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer* and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, *the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file* in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."
> 15 U.S.C. § 1681i(a)(1)(a) (emphasis added).

51. On or about January 16 of 2024, the Plaintiff initiated a dispute with Equifax requesting that they correct and remove the specific fraudulent items in her credit file that were patently inaccurate and damaging to her, including the fraudulent AMEX and Ally accounts. Plaintiff provided information and documentation showing that she was the victim of identity theft and had not opened these accounts.

52. However, Experian never adequately investigated the Plaintiff's disputes, as required by the FCRA.

53. Instead, Experian, after either conducting no investigation or failing to conduct a reasonable investigation, continued to report this inaccurate information, something that any basic investigation would have prevented.

54. As a direct and proximate result of Experian's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed, as explained above.

### COUNT IV
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681c-2
### AGAINST EXPERIAN

55. Plaintiff incorporates by reference all preceding paragraphs.

56. On or about January 16, 2024, Plaintiff initiated a dispute with Experian requesting that they correct and remove the AMEX and Ally accounts, as these accounts were fraudulently opened by an individual other than Plaintiff as a result of identity theft.

57. In support of this dispute, the Plaintiff included copies of the sworn FTC Identity Theft Affidavit.

58. Experian refused to acknowledge that it had different obligations under such circumstances than those triggered by a standard dispute.

59. As such, instead of following the law and blocking the fraudulent information on the Plaintiff's credit report within four days of receiving the dispute, Experian continued to report this fraudulent information.

60. As a direct and proximate result of Experian's willful and/or negligent refusal to block this fraudulent information, as mandated by the FCRA, Plaintiff has been harmed.

**COUNT V**
**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681i**
**AGAINST TRANSUNION**

61. Plaintiff incorporates by reference all preceding paragraphs.

62. At all times pertinent hereto, Transunion was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

63. The FCRA provides that:

> "***if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer*** and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, ***the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file*** in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."
> 15 U.S.C. § 1681i(a)(1)(a) (emphasis added).

64. On or about January 16 of 2024, the Plaintiff initiated a dispute with Transunion requesting that they correct and remove the specific fraudulent items in her credit file that were patently inaccurate and damaging to her, including the fraudulent AMEX and Ally accounts. Plaintiff provided information and documentation showing that she was the victim of identity theft and had not opened these accounts.

65. However, Transunion never adequately investigated the Plaintiff's disputes, as

-11-

required by the FCRA.

66. Instead, Transunion, after either conducting no investigation or failing to conduct a reasonable investigation, continued to report this inaccurate information, something that any basic investigation would have prevented.

67. As a direct and proximate result of Transunion's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed, as explained above.

## COUNT VI
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681c-2
## AGAINST TRANSUNION

68. Plaintiff incorporates by reference all preceding paragraphs.

69. On or about January 16, 2024, Plaintiff initiated a dispute with Transunion requesting that they correct and remove the AMEX and Ally accounts, as these accounts were fraudulently opened by an individual other than Plaintiff as a result of identity theft.

70. In support of this dispute, the Plaintiff included copies of the sworn FTC Identity Theft Affidavit.

71. Transunion refused to acknowledge that it had different obligations under such circumstances than those triggered by a standard dispute.

72. As such, instead of following the law and blocking the fraudulent information on the Plaintiff's credit report within four days of receiving the dispute, Transunion continued to report this fraudulent information.

73. As a direct and proximate result of Transunion's willful and/or negligent refusal to block this fraudulent information, as mandated by the FCRA, Plaintiff has been harmed.

## COUNT VII
**FAILURE TO INVESTIGATE DISPUTE**
**FCRA, 15 U.S.C. § 1681s-2(b)**
**AGAINST AMEX**

74. Plaintiff incorporates by reference all preceding paragraphs.

75. Furnishers of credit information have a duty under the FCRA to investigate disputes from consumers as to the accuracy of information being reported.

76. On or about January 16, 2024, Plaintiff initiated disputes with the credit bureaus disputing the accuracy of the account being reported by AMEX.

77. Upon information and belief, AMEX received notice of these disputes from the credit bureaus.

78. AMEX was obligated, pursuant to section 1681s-2(b) of the FCRA to conduct a complete and thorough investigation with respect to Plaintiff's dispute.

79. Even after the Plaintiff properly disputed these accounts with the credit reporting agencies, AMEX refused to conduct a reasonable investigation and continued inaccurately reporting the multiple fraudulent accounts on Plaintiff's credit reports.

80. AMEX's conduct violated section 1681s-2(b) of the FCRA.

81. As a result of AMEX's conduct, Plaintiff was harmed, as discussed above.

## COUNT VIII
**FAILURE TO INVESTIGATE DISPUTE**
**FCRA, 15 U.S.C. § 1681s-2(b)**
**AGAINST ALLY**

82. Plaintiff incorporates by reference all preceding paragraphs.

83. Furnishers of credit information have a duty under the FCRA to investigate disputes from consumers as to the accuracy of information being reported.

84. On or about January 16, 2024, Plaintiff initiated disputes with the credit bureaus disputing the accuracy of the account being reported by ALLY.

85. Upon information and belief, ALLY received notice of these disputes from the credit bureaus.

86. ALLY was obligated, pursuant to section 1681s-2(b) of the FCRA to conduct a complete and thorough investigation with respect to Plaintiff's dispute.

87. Even after the Plaintiff properly disputed these accounts with the credit reporting agencies, ALLY refused to conduct a reasonable investigation and continued inaccurately reporting the multiple fraudulent accounts on Plaintiff's credit reports.

88. ALLY's conduct violated section 1681s-2(b) of the FCRA.

89. As a result of ALLY's conduct, Plaintiff was harmed, as discussed above.

## DEMAND FOR TRIAL BY JURY

90. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demand judgment against Defendants as follows:

A. Awarding Plaintiff actual damages, statutory damages and punitive damages pursuant to pursuant to 15 U.S.C. §§ 1681n and/or 1681o, including pre-judgment and post-judgment interest;

B. Awarding Plaintiff the costs of this action and reasonable attorneys' fees and expenses pursuant to 15 U.S.C. §§ 1681n and/or 1681o;

C. A declaration that Defendants' conduct alleged herein is unlawful, as set forth more fully above;

D. Equitable relief, enjoining Defendants from engaging in the unjust and unlawful conduct alleged herein; and

E. Awarding Plaintiff such other and further relief as this Court may deem just and proper.

Dated: April 10, 2024

/s/ Aryeh E. Stein
Aryeh E. Stein, # 45895
Meridian Law, LLC
1212 Reisterstown Road
Baltimore, MD 21208
443-326-6011 (phone)
410-782-3199 (fax)
astein@meridianlawfirm.com
*Attorney for Plaintiff*

Yitzchak Zelman, Esq.
MARCUS & ZELMAN, LLC
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
(732) 695-3282 telephone
(732) 298-6256 facsimile
*Attorney for Plaintiff*
Pro Hac Vice Motion Forthcoming